Our third judge, Judge Rovner, will be participating by video. So, first case, Velijkovic v. Carlson Hotels. Mr. Pavich, as in cat. Although I don't know about Judge Rovner. Good morning, Judge Rovner. Meow. And may I proceed, Your Honor? Yes, proceed. We're here, Your Honor, because we've been sent to Belgrade. And we believe we should not have been sent there under the Doctrine of Foreign Nonconvenience. We've been sent there because the trial court believed that the Serbian Restitution Agency was an available and adequate forum. And that in considering and weighing public and private factors, that they all weighed sufficiently. So, in favor of defense, that the case should be transferred to Belgrade.  First and foremost. Mr. Pavich, it appears that relatives of one of the plaintiffs are seeking compensation in Serbia through the Serbian Restitution Agency. Does conducting parallel proceedings in the United States create the risk of conflicting judgments or the possibility of a double recovery? Not in this case, Your Honor, for several reasons. First, the proceedings in Belgrade requires, I think, a little bit of explanation about what the Serbian Restitution Agency is. It is an administrative agency. It's an administrative agency that was created under the law of restitution in the Republic of Serbia in 2011. In order to accommodate the hundreds of thousands of claims that were going to be made by citizens of Serbia against the government of Serbia for the nationalization of properties that took place in 1945. With the fall of the communist government and the socialist government and the institution of the whole period of transitional democracy. One of the things that had to be accomplished in the entire nation was the transition between state-owned property and private property. So that private owners of private property, such as the Veljkovic family, such as the Dimic family, would have an opportunity by making a claim for restitution against the government of Serbia before the Serbian Restitution Agency. The Serbian Restitution Agency was specifically and exclusively created by the law on restitution in order to provide a forum for claims for restitution. And by restitution, it is meant that property in kind would be returned to those individuals. The claim that we are making here against the Carlsen and Radisson hotels is not for property restitution. It is an entirely different claim involving entirely different parties so that we have, as parties, the Serbian Restitution Agency could not, even if it wished to, entertain our claim. Their hands are totally occupied by the exclusive jurisdiction that they've been given and the sole jurisdiction over these hundreds of thousands of claims that are being made by Serbian citizens to get property restored to them. These are not tort claims for use of the property. These are claims to simply get the property back. So that if, for example, the Veljkovic family is successful, and by no means is guaranteed that it will be successful, these claims have been going on for many years, the most that they could get would be restitution of the property itself. They could get the property back. They would not be compensated, there was no remedy here, for the improper use of that property that's being made by the hotel group since 2014. So that none of these parties, first of all the parties, are not under the jurisdiction and cannot be brought under the jurisdiction of this administrative agency. Well if the hotels are on the property you're trying to get back, aren't they? That's correct. So you'd be getting the hotels, wouldn't you? No. Well what would happen to the hotels if they're on your property and you get your property back? That's a question that probably would be open to how the law of restitution evolves. It's still evolving. Probably what would happen is the hotels would continue to operate and as the owners of the property we would have a right for claims for compensation for the illegal use of the property. So Serbian courts have exclusive jurisdiction in disputes involving real property in Serbia, right? The Serbian Restitution Agency has exclusive jurisdiction for the claim that's being made by the Veljkovic family. It's not a parallel claim as Judge Rovner was asking me. Those are the claims to get restitution. And if restitution is not possible, and there are a number of reasons or exceptions that restitution might not be possible, including bona fide purchasers, in which case some type of agreement would have to be reached between the actual owners of the property and the users of the property. There are a number of conditions in the Serbian Restitution Agency. Your clients wanted the property back and you were just suggesting they get the property back. The hotels owned by Karlsson, they're still there, but they would have to pay rental. They would have to pay some compensation for the use of the property. That's correct, Your Honor. Now isn't this relief that the Serbian Agency can provide? No, it's not. Why not? Because the Serbian Restitution Agency can only provide relief in the form of in-kind restitution of the property. It has no jurisdiction over a claim for wrongful use of the property. If we can distinguish the difference between, for example, an injunctive relief that gets property back, even if they got the property back, they would be given no compensation for the illegal use of that property. That's a separate and distinct claim over which the Serbian Restitution Agency has no jurisdiction because it has no jurisdiction over the parties here. It only has jurisdiction... But you don't actually want the property back. You want money, right? We're entitled, well... I mean, you know it's going to... In this claim, in this claim... Apparently, from what I understand, the hotels are not going to be torn down and you're not going to get the hotels. You get the property back and therefore you, you know, can charge them rental. We can't get the property back in the case we're claiming here against Radisson and Carlson. The property, if it comes back, and it's by no means clear that it will because there's a second remedy. If the property doesn't come back, then there's this compensation fund that might be created in lieu of the property coming back. And that's still very much an open question in Serbia, whether we'd even be able to get the property back. It might be that if we're not entitled to the property back, as Carlson and Radisson claim, then we're simply capped in terms of a certain amount of compensation which we believe is totally inadequate. But that goes totally and completely to the remedy of the property itself. The claim to bring the property back. A separate and distinct claim is the claim for wrongful use of the property. That claim cannot be entertained by the Serbian Restitution Agency because it has no jurisdiction over the parties and it has no subject matter jurisdiction over the claim for wrongful use. So you said they might not be able to get the property back. What evidence is there in the record that establishes that Alex and Nicholas are owners of that property? There's a decision that has been made. There are two laws that are somewhat relevant to this. The law on rehabilitation, which gives them the right to have standing before the Serbian Restitution Agency. You have to establish through a Serbian court, which they did in 2009, that you are the owners of the property. You don't have standing before the Serbian Restitution Agency unless you can show that you have ownership rights. No one's really contesting that. The defense experts agree that they have ownership rights. There's no dispute about that. But they're simply saying they don't have rights of possession. And possession would be given under the Serbian Restitution Agency or, in lieu of that, some compensation in lieu of possession. That's the only claim. Are you saying, forgive me, but are you saying that the plaintiffs would be barred from filing a claim for that reason in front of the SRA? A claim for what we're seeking here? Absolutely. For two reasons. The SRA has neither personal jurisdiction over the parties. It has jurisdiction only, under the statute that created it, involving claims against the Serbian government for restitution by former owners. So any claim that's being made before the SRA has to be a claim against the Serbian government. The SRA cannot entertain any claims against any parties other than the Serbian government. So it is not an available form. Also, the SRA cannot entertain claims for loss of use, which is the claim we're making here. It can only entertain a claim being made by these Serbian residents for restitution of the property. If they can't get the property back, then the remedy that they're given is some compensation in lieu of that by a fund that has not even been created yet by the Serbian government. So we have no remedy. We have no forum, because if we were to go back today, an hour before, if you were the Serbian Restitution Agency, I would say, your honors, we're here because we have a claim against Carlson and Radisson, and they would say, wait a minute. We're an administrative agency. We can't hear any claims against Carlson and Radisson. We can hear a claim against the Serbian government. Well, we have a claim for usage rights. We can't entertain that either. They would simply tell us you have to go somewhere else. We're an administrative agency that has been created by statute, strictly limited to claims only against the Serbian government for restitution of property. If we can't give you restitution of property, then there may be a fund created in the future that will give you some compensation for the taking of your property. We would get no hearing there. I thought what you were seeking is the restitution of the property. Not in this case. Absolutely not. We are not seeking restitution of property. I thought you wanted the property back, but Carlson would continue to operate its hotels on it, but they would pay you for the use of your property. We're seeking here compensation. That's not what you're seeking? We're seeking compensation for the wrongful use of our property. Carlson can't give us back our property. They don't own it. We have no claim here for the property. Well, who owns it? The Serbian government, your honor. Well, why can't you get it back from the Serbian government? That's the claim against the Serbian Restitution Agency for the property, not this claim. You're precisely correct. You've lost me completely. You can ask the agency to return the property to you? That is the claim for restitution. That is the law on restitution in Serbia, yes. Okay, well then why doesn't that satisfy you? Get the property back? What more do you want? First of all, they may not be able to give us the property back, your honor. And if we got the property back, it still doesn't compensate us for the wrongful use of the property. We'd have to make a separate claim for that. But this gets back to the question I asked originally, which is, the Serbian courts have exclusive jurisdiction in disputes involving real property rights in Serbia, and you said the government was the real owner of the property now. And so I just don't understand why they wouldn't have the jurisdiction. They have jurisdiction only for claims to get the property back. Claims against the Serbian government because the property was nationalized. Why on earth are your clients not satisfied with getting the property back? First of all, they haven't gotten the property back. Well look, I don't understand you. Why aren't they just asking the Serbian agency to give them the property back? They are. Well then what do you want to have a lawsuit in the United States then? Because we're seeking here compensation for the wrongful use of that property. But if you get the property back, why won't that take care of your clients? We would still then have to make a separate claim for the wrongful use of that property, either here or in Serbia. There would be a second step, which is totally distinct from what you would perceive as a first step. Well are you going to take the first step and try to get the property back? They've been taking that for 15 years, Your Honor. Attempting that. That's correct. But that's a separate and distinct step and a separate and distinct claim. This is a form of non-convenience issue. That form is not available to us. On what basis do you think you can collect all the defendants in Illinois? They're not all in Illinois. That motion, that's a jurisdictional motion and we will deal with that. Wait a second. Don't say you will deal with it. What is the basis? Hey, let me finish, would you please? What's the basis on which you think you can bring all the defendants into Illinois to sue, rather than suing piecemeal in different states? We have an Illinois resident who's been wronged by the conduct of... I know, that doesn't mean you can sue companies all over the world in Illinois. No, but that's a start. We have an Illinois resident who's making a claim against... I know, what about the defendants? What is their residence? Carlson is a resident of Minnesota. Right. And there's a joint partnership between Carlson and Raddison in Minnesota. Could we make a claim there? Yes. We also believe we can make a claim here, either in Illinois or in Minnesota, Your Honor. Yes. I don't understand the basis for you suing a Minnesota company in Illinois. I'm sorry, Your Honor, I couldn't hear what you're talking about. What is your basis for suing a Minnesota company in Illinois? Because the conduct of tort that has committed... What are they doing in Illinois? Are they in Illinois? They committed a tort, Your Honor. Are they in Illinois? They're in Serbia and they're in Minnesota. They're in Minnesota. They're not in Illinois. Well, Carlson probably is doing business in Illinois, but... I don't even know whether it is. Say probably. Well, we can sue them if they have committed a tort that has injured an Illinois resident, even though that tort itself, the act, may have taken place outside of Illinois or outside of Minnesota. It's not just the act taking place outside. You want to sue a Minnesota company for harms to property owned by your clients or you think owned by your clients in Serbia, and you want to sue them in Illinois. That's what we're doing, yes. I don't get that. Your Honor, I think that certainly... If a company or individual experiences an injury, it can bring a suit in the courts of that state, even if the defendants are in outer Mongolia? No, these defendants are in Minnesota, Your Honor. Could we sue them in Minnesota? Yes. Could we sue them here as well? We believe we can. You think you can always sue a company, a person, no matter where they're located? No. This company happens to be headquartered and incorporated in Minnesota. So why aren't you suing in Minnesota? I think we could choose to have done that, Your Honor. That's correct. If there's a venue motion to move this to Minnesota, we can address that at that time. So the defendants are correct that Residor would have to be dismissed in any event because the court lacks personal jurisdiction over him? That's a separate issue, as Your Honor knows. That is their position. We believe that Residor has a presence in Minnesota because the joint venture between Harrelson and Residor is headquartered in Minnesota. It was that joint venture that has taken the action to build, not to build, but to operate this hotel on our client's property. We don't have possession of the property, but we have ownership rights to the property. We're establishing that in a separate claim that has nothing to do with this claim before an agency that cannot hear this claim, that's not authorized, an administrative agency that's not authorized to hear this claim. That's why there's no, that the Serbian Restitution Agency is not available in adequate form. So are you suing Residor? How do we have personal jurisdiction over Residor? I'm following along with Judge Robner what she raised. You still haven't answered that. We would have to, Your Honor, that's an issue. You explained the relationship in Minnesota and what's going on in Serbia. And I understand that we may have to do some additional work to address that jurisdictional issue by Residor, which is separate and apart from the form of nonconvenience. We would have to be looking at the Residor-Harrelson joint venture headquartered in Minnesota and explore that further in terms of determining whether we can, through that partnership, assert personal jurisdiction over Residor. That would be the path, Your Honor, but we haven't been able to embark on that path yet because we have been in a preliminary ruling that addresses form of nonconvenience before we even addressed the Residor personal jurisdiction, the issue of the Serbian Restitution Agency. That's a path that we would explore and we intend to explore, but we haven't been able to do that at this stage. This Serbian agency, is there judicial review in Serbia of its decisions? There's an administrative structure that can review that, Your Honor. But again, it's not any claim that can be made against any of these defendants and it cannot entertain the subject matter of our claim. That's why it's not, it's neither available nor adequate. Okay, well thank you, Mr. Pavich. Mr. Padilla or Mr. Padilla? Good morning, Your Honor. My name is Chris Comstock. I don't know if we got the name switched there, but I was planning to go first if that's all right. Yeah, no, that's the first name, I understand. Oh, not a problem. I'm sorry. Thank you. May it please the Court. I'd like to today address adequacy and availability and also Residor AB's separate argument on personal jurisdiction. My co-counsel is prepared to address the weighing of the public and private interest factors and the standing argument. But before I get started, I'd like to just clear up a few issues that came up in the opening argument. First of all, just so the record's clear, my client is named Residor Hotel Group AB. I don't think, there's no Radisson Party involved here, so this is Residor. And Residor, as plaintiffs allege in their jurisdictional statement, and we agree, we are a company incorporated in Sweden. We have our principal place of business in Belgium. There is no legal entity that's a joint venture between Carlson and Residor. So we're entirely a foreign company, and that's why we've moved on lack of personal jurisdiction. I also wanted to address, I believe plaintiffs' counsel said that we don't contest their ownership rights. The defendants in this case have contested any claim by plaintiffs that they have ownership rights or usage rights over the land throughout this lawsuit. So we've been very consistent in that point, and I think it's important to understand the basis for plaintiffs' claims here. They say that their ancestors owned stock in a joint stock company called the Varkar Cooperative. And they say in 1945, the government nationalized that cooperative and took their stock away from them. And they said that the cooperative before that point owned the land in Serbia, and then it was taken away from them. So what plaintiffs are saying is that they are descendants of people who owned stock in a company that owned this land. Now, for their distinction that they drew between usage rights and the taking or getting the land back in restitution, I think we got there eventually, but what the Serbian attorneys in this case, their declarations have said, is that the restitution agency has two types of relief they can offer. It can offer in-kind restitution in certain circumstances, and it can offer government bonds up to at least 500,000 euros. So what the Serbian attorneys have said is that when you have lands like this that is developed land owned by a private, or the posture of this land is that the Serbian government has ownership rights over it, but a private party has usage rights over the land. And so in that circumstance, when you have developed land, the SRA cannot offer in-kind restitution. It can offer government bonds. But as Your Honors pointed out, plaintiffs' family members have brought a number of claims before the SRA seeking restitution and seeking government bonds. So they have remedies before the SRA. Wait a minute. Forgive me. On page 27 of the response brief, the defendants asserted that they have, quote, agreed to and will abide by any decision of the SRA. What does that mean? The SRA cannot enter a decision that would affect the defendants at all. Can it? Judge Rovner, I believe it can in this sense. The defendants, as they're currently, you know, as alleged in the complaint, defendants have some role in operating a hotel. At least the complaint alleges that. We get into the specifics about which entities are actually operating the hotel. But the SRA could order different types of relief under the Restitution Act that would affect the land there. So we've agreed in this case that whatever the SRA decides with respect to this land, we'll abide by it. We're not going to challenge that decision. And I think that really highlights the distinction in this case on availability, which is plaintiffs' argument on availability here is that the touchstone of whether a foreign venue is available is the source of relief in that forum. Which is to say, plaintiffs say that a foreign forum is available only if it can require the defendants to make relief to the plaintiffs. Whereas we say a foreign forum is available if it provides relief to the plaintiffs for their claim. And in this case, all of the plaintiffs' claims are premised and predicated on the idea that they have some usage rights or ownership rights over the land. And that issue can only be decided by the SRA. So I think our position on availability, supported by the Supreme Court's decision in Piper Aircraft, as well as this court's decisions which have held that the touchstone of availability and adequacy is whether the plaintiffs have some potential remedy in the alternative forum. And on specifically- You know, you alluded to 18 claims allegedly filed in the SRA by relatives of the plaintiffs. Do we know the outcome of those claims? And what is the relevance of those claims, given that none seem to address conduct by the defendants in this case? Well, Your Honor, I think one of the issues is that the proceedings before the SRA, we can't get all of the documents that have been filed before the SRA. My understanding is that all of those claims are still pending before the agency. And the relevance, I believe, is that it demonstrates that plaintiffs who- If you look at the First Amendment complaint, plaintiffs say, we're bringing this case on behalf of the family interest in this property. Well, the family has recognized that the proper forum for those claims is the Serbian Restitution Agency. They've already brought claims before there. They're trying to get restitution. And that is the alternative forum here. And it does offer them and their family members relief. And what about an appeal from their decision? We have noted the appellate rights. It's in the supporting declaration attached to our reply brief on forum nonconvenience that we filed below. There are several levels of appeal that can go up through administrative and court systems. Those are laid out specifically in that declaration. So it does go to a court system. I thought it wasn't just administrative. So it does get to judicial review. It can, Your Honor, yes. There are appellate steps there. So should the plaintiffs have brought their case in Minnesota? Your Honor, with respect to Residore AB, no. Because we are a Swedish company with a principal place of business in Belgium. So there's no general personal jurisdiction. With respect to specific personal jurisdiction, we argue that every allegation in the complaint relates to activities that happened in Serbia. Plaintiffs say that some things may have happened in Minnesota. But we disagree that that gives rise to personal jurisdiction. But in any event, they did choose to bring this in Illinois. And there is no allegation that suggests that any activity here relates to anything that happened in Illinois. So unless there are other questions, I'll yield my time to my co-counsel. Okay. Thank you, Mr. Comstock. Thank you. Ms. Upadhyaya. Thank you. May it please the court. Mokshila Upadhyaya. Unfortunately, my name does not rhyme with any animal. So I can't help there. So you're out of luck. Your Honors, I'm prepared to address the public-private interest factors that the district court weighed and properly weighed in the outcome that the district court reached. But one, I'm compelled to respond to one issue here, which I think is a fundamental issue. The defendants believe it's a fundamental issue in this case. Wherever this case proceeds, the claims of trespass, conversion, civil conspiracy, those claims cannot even be stated without a plaintiff showing the predicate element of having actual possession of the property or an ownership right. And the only forum that can determine that is the Serbian Restitution Agency. That is a very big problem, to be honest. And we believe that the district court recognized that and said this case needs to be adjudicated in Serbia. So I'd like to just make that very clear on the record that no matter where this proceeds, those predicate findings have to be made and there's only one jurisdiction that can make that. That's either the Serbian court system or the Serbian Restitution Agency. There's nothing to prohibit plaintiffs from taking an order from the Serbian Restitution Agency of in-kind restitution. So, for example, if the Serbian Restitution Agency determines, which the district court knew could be a potential outcome, that plaintiffs were entitled to actual possession and in-kind restitution of the land, that finding can be taken to a Serbian court and said, okay, Carlson Hotels, Inc., Residor, you're trespassing on the land. And seek some sort of relief from defendants in that fashion. Now, I will say Carlson Hotels, Inc., there's unrebutted affidavit in the record from Carlson Hotels, Inc., that Carlson Hotels, Inc. is a mere licensor of the Radisson Blu brand. So it is neither in possession of the property in Belgrade, it's not the owner of the hotel, and it's not the operator of the hotel. And as we know from our argument today, it's not the owner of the underlying land. So I wanted to make that clear to the court because I think it is a major defect in the pleadings and proceeding anywhere but the... When you say they're not the owner of the land, but aren't they trying to assert ownership, isn't it? But their ancestors owned it and it was basically stolen by Tito. So what has been alleged in the case is that plaintiffs are the descendants of two families that owned shares in a joint stock company called the Vrakar Cooperative, as my co-counsel said. So plaintiffs themselves, there's nothing in the record to establish that the plaintiffs themselves have a direct interest in this land. And that goes to our Article 3 standing problem, which we also believe is a major defect in proceeding in this forum. Plaintiffs have not established that they are, for example, a personal representative of their ancestors or executors of the estate, or that there's a direct interest that the plaintiffs themselves have. So yes, they have... It's alleged that their ancestors have an interest in a joint stock company that allegedly owned the land. But as far as exercising some sort of direct ownership interest, that's not established in the record. And we've made an argument that the plaintiffs lack standing under the precedent of this court, including the slave descendants litigation. So nothing is known about whom the ancestors may have left their stock to? That's correct. And not only that, if you look at the face of the complaint, Your Honor, there are others who own shares in that joint stock company who are not before this court. We don't know who those families or those individuals are. So we could be in a situation in which the district court in the Northern District of Illinois is adjudicating property, in-ramp property rights against descendants of alleged owners, when there are other owners or other rightful heirs or personal representatives or executors who could also have a claim to that property. And that is, I believe, Judge Rovner's, one of her first questions was, how do we deal with the fact that these parallel proceedings in the Serbian Restitution Agency could very well create two decisions completely at odds? Or actually, 18 decisions and perhaps one decision here that are completely at odds and could very well create competing decisions and rights to the land. And I believe the district court, who had all of this before him, recognized that, weighed the public interest factors, weighed the private interest factors. The court, in the second sentence of its opinion, recognizes that the plaintiffs themselves are not even the real parties in interest. The court says that the plaintiffs are here representing their, quote, family interests. If the court has any further questions for me, I'm happy to address them. But these are the real problems we see with proceeding in this district. Okay, well, thank you very much, Ms. How do you pronounce your name? It's Upadhyay. Upadhyay? That's very close, Your Honor. I'm close? It's close enough, Your Honor. Thank you. Thank you. Thank you for your time. So, Mr. Pavich? I'd be more than happy to address the public and private interest factors, but I don't think Ms. Upadhyay addressed those. I do want to address the preliminary points that she's made and strongly contest them. Our ownership rights have been established. We cannot make a claim before the Serbian Restitution Agency unless we've established those ownership rights. Those ownership rights were established by a decision, a final decision, of a Serbian court in 2009 that renewed all of the property rights, renewed the name, rehabilitated the name and the property rights that had been taken away in 1945. That's the decision that we're relying upon. There's no Serbian court that needs to be brought or decision that needs to be made beyond that decision that's already been made. That gave us the ownership rights. It restored our ownership rights and gave us the right then to proceed before the Serbian Restitution Agency. And as far as the standing issue is concerned, we haven't agreed to that. But you don't want to be before the Serbian Restitution Agency. You want to be in the Northern District of Illinois. We believe we're entitled to be in both places, Your Honor, because we're seeking different remedies against different parties. And the Debb case, we believe, is really dispositive here. What are you seeking in Illinois that you can't get from the Serbian agency? The Serbian agency cannot give us any relief for the wrongful use of our property. It cannot do that. It has no jurisdiction over that. It can only determine whether, having established our ownership rights, which we have, and by the way, they are no less, I think, proper for standing here than a member of the Rockefeller family or the Ford family. Why did you sue in Illinois? Because Alexi Velkovich is a citizen of Illinois. And Illinois certainly has an interest in this. Senator Kirk has stepped forward on behalf of an Illinois resident on this. Could we have sued in Minnesota? Yes. Could we sue in Illinois? We believe we can't. But the issue before this Court is whether there's an available form... Well, how in Illinois do you get personal jurisdiction over a company in Minnesota? We believe that the company in Minnesota has sufficient presence in Illinois to allow us to do that, Your Honor. What does it have in Illinois? Well, again, we haven't done the jurisdictional discovery yet, Your Honor, but we believe that Carlson... Wait a minute. You brought your suit without researching jurisdiction? No, we did research jurisdiction, Your Honor. Well, you just said you didn't. No, I said that there may be more jurisdictional discovery that we've been entitled to beyond the work that we've done without the benefit of... What this Minnesota company is doing in Illinois. Their conduct in Minnesota has harmed a resident. Forget their conduct in Minnesota. What are they doing in Illinois? They've harmed an Illinois resident. Their conduct has caused damage to an Illinois resident. An Illinois resident has been damaged by their conduct, by their tortious conduct. So you've abolished personal jurisdiction. You think that you can sue anyone in the world who's caused... anyone in the world in Illinois if that person has caused you damage in Illinois? No. No, we haven't said that. We believe that we can sue Carlson for this damage. We believe that we can sue Carlson for this damage caused to this Illinois resident based on the tortious conduct of that corporation in Minnesota that has resulted in damage to an Illinois resident. But apparently, is Carlson doing anything in Illinois? I believe they're conducting business in Illinois, Your Honor. But did they do anything in Illinois to harm your clients? The harm to our client was primarily done by their activities in Minnesota. That's correct, Your Honor. But that harm is... How did what they do in Minnesota harm your clients? They'd entered into an operating agreement or they caused an operating agreement in this hotel to be operated. They are, under the operating agreement, Carlson and Resador are additional insurers under the operating agreement. The operating agreement provides that. All this hotel is going to be conducted and operated under the standards system, the Carlson system. All that planning, Your Honor, for the operation of this hotel was done in Minnesota. The agreement, the operating agreement that's part of the record here between the wholly owned subsidiary of Resador, a Danish company and a Serbian company is required to be in English, is in English. All the documentation of that agreement has to be in English. And when was this done in Minnesota? The harm to your clients? The harm to our clients was done when they began operating this hotel. When, when, when? They began operating... When was that? They began operating the hotel in 2004... When? Your Honor, I'm trying to answer that. Like a date. It was 2014. The operating agreement was entered into prior to that. The law on restitution was passed in 2011. So it was between 2011 and 2014 was the opening date. I think we have an opening date here. Carlson announced the opening of the hotel on November 7th of 2011, the operation of the hotel under their brand name. All of these meetings, all of this conduct, all of the paper, every written communication relating to the operation of this hotel has to be in English. Now why would an agreement between a Danish company and a Serbian company be required to be in English and all written communications be in English? Why? Because the real masters of this... Required by whom? I'm sorry, Your Honor? Required by whom to be in English? The agreement itself. If you look at Section 29... What agreement? The operating agreement of the hotel. The operating agreement of the hotel is probably the most important document in this case. We were able to get the operating agreement from Radisson's attorneys. And the operating agreement provides us that this hotel is going to be entirely operated under the Radisson Blue name, the brand name of Carlsen and Residor, under the system established by Carlsen. Any customer that goes into that hotel becomes a member of the Carlsen Priority Club. Carlsen is entitled to take any... If you go into that hotel today, Carlsen is entitled to take the information that they get from your reservation and use it in their marketing, to use it in any number of ways that can enhance and expand their global marketing system. Carlsen and Residor are required to be named insurers. Pursuant to the operating agreement, they are named insurers under the insurance policy from Residor or from Pregon and from the Danish company. Okay, well, we better stop here. Your Honor, all this was going on in Minnesota. Right, okay. That's why we believe that... Now, Your Honor, one other thing. They say that they're a mere licensee. They're not an operator. The operating agreement, I think, belies that. And I think the most important thing, I think, to respond to the direct preliminary point that's been made by counsel here, we do have ownership rights. Those were established by the final decision of a Serbian court giving us the ownership rights, which gave us the standing to proceed before the Serbian Restitution Agency, but only on its claim for restitution. And if I draw your attention again to the Deb case, it's very clear in the Deb case the alternative forum must have jurisdiction over all the parties. The Serbian Restitution Agency does not have jurisdiction over the parties. And their consent, and it was not a consent, simply said that they will not object to or intervene in the decision of the Serbian Restitution Agency, which they well know is a decision that will not affect them and would never be able to affect them, Your Honor. Thank you, Mr. Pavic. And thank you to Ms. Padilla and Mr. Comstock. So move on to our second case.